UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
at LONDON

CIVIL ACTION NO. 6:08-405-KKC

SUSAN M. TRUITT                                                            PLAINTIFF

v.                      **MEMORANDUM OPINION AND ORDER**

MICHAEL J. ASTRUE, COMMISSIONER
OF SOCIAL SECURITY                                                  DEFENDANT

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

This matter is before the Court on Cross Motions for Summary Judgment filed by Plaintiff Susan M. Truitt ("Truitt") and Defendant Michael J. Astrue, Commissioner of Social Security ("the Commissioner'). Rec. 14, 17, 18. For the reasons set forth below, the Court finds that the Commissioner's decision denying Truitt's claim for Supplemental Security Income ("SSI") is supported by substantial evidence in the record. Accordingly, the Court will grant the Commissioner's Motion for Summary Judgment.

I.     FACTUAL AND PROCEDURAL BACKGROUND

**A. Procedural Background**

Truitt originally filed an application for SSI alleging a period of disability beginning April 6, 2003 which was denied initially and on reconsideration. Tr. 835. Truitt then timely filed a request for a hearing, which was held on July 7, 2005 before Administrative Law Judge ("ALJ") Joan Lawrence. Tr. 515-28. On May 17, 2006, ALJ Lawrence issued an unfavorable decision. Tr. 14-22. The Social Security Administration's ("SSA's") Appeals Council then decline Truitt's request for review. Tr. 8-10. After exhausting all available administrative remedies,

Truitt filed Civil Action No. 6:06-cv-532-GWU and the Commissioner requested a voluntary remand pursuant to Sentence Four of 42 U.S.C. § 405(g). The motion was granted and Truitt's claim was remanded for further consideration.

Following remand, on February 27, 2008 a hearing was held before a different ALJ who issued an unfavorable decision on August 20, 2008. Tr. 529-39. The SSA's Appeals Council again denied Truitt's request for review and Truitt again filed suit in federal court. The Commissioner then requested a second voluntary remand, this time pursuant to Sentence Six of 42 U.S.C. § 405(g). After the motion was granted, a third hearing was held, this time before ALJ Frank Letchworth on August 16, 2009. Tr. 1474-1500. On December 21, 2009, ALJ Letchworth issued an unfavorable decision. Tr. 832-47. After the Appeals Council took no action, the Commissioner re-docketed this case and requested that the final unfavorable decision be affirmed.

**B. Factual Background**

Truitt was thirty-four years old when ALJ Letchworth issued his hearing decision on December 21, 2009. Tr. 48, 835-47. Truitt has a high school education and previous work experience as a video arcade attendant, hostess and telemarketer. Tr. 65, 69. She claims that she became disabled as of April 6, 2003 due to obesity, degenerative disc disease, a bulging disc and bone spurs in her neck, bipolar disorder and panic, depression and anxiety attacks. Tr. 64-65, 1481-82, 1492.

**II. DISCUSSION**

**A. Standard of Review**

When reviewing decisions of the Social Security Agency, the Court is commanded to

uphold the Agency decision, "absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (internal quotation marks and citation omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 285-86 (6th Cir. 1994).

This Court must defer to the Agency's decision "even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). The Court may not review the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *Nelson v. Comm'r of Soc. Sec.*, 195 Fed. App'x 462, 468 (6th Cir. 2006); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Where the Commissioner adopts the ALJ's opinion as his own opinion, the Court reviews the ALJ's opinion directly. *See Sharp v. Barnhart*, 152 Fed. App'x 503, 506 (6th Cir. 2005).

**B. Overview of the Process**

Under the Social Security Act, disability is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007). The disability determination is made by an ALJ using a five step sequential evaluation process. *See* 20 C.F.R. § 416.920. The claimant has the burden of proving the

3

existence and severity of limitations caused by her impairments and that she is precluded from performing her past relevant work for the first four steps of the process. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). However, the burden shifts to the Commissioner for the fifth step. *Id*.

At the first step, the claimant must show that she is not currently engaging in substantial gainful activity. *See* 20 C.F.R. § 416.920(a)(4)(I); 20 C.F.R. § 404.1520(b). At the second step, the claimant must show that she suffers from a severe impairment or a combination of impairments that are severe. *See* 20 C.F.R. § 404.1520(c). At the third step, a claimant must establish that her impairment or combination of impairments meet or medically equal a listed impairment. *See* 20 C.F.R. § 404.1520(d); 20 C.F.R. § 404.1525; 20 C.F.R. § 404.1526.

Before considering the fourth step, the ALJ must determine the claimant's residual functional capacity ("RFC"). *See* 20 C.F.R. § 404.1520(e). The RFC analyzes an individual's ability to do physical and mental work activities on a sustained basis despite any existing mental or physical impairments. In determining the RFC, the ALJ must consider all of the claimant's impairments, including those which are not severe. *See* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545. Once the ALJ has determined the RFC, he must then determine whether the claimant's RFC allows her to perform the requirements of her past relevant work. *See* 20 C.F.R. § 404.1520(f). If the claimant cannot perform her past relevant work, then the inquiry proceeds to the fifth step.

At the fifth step, the burden shifts to the Commissioner to establish that there is sufficient work in the national economy that the claimant can perform given her RFC, age, education and work experience. *See* 20 C.F.R. § 404.1520(g); 20 C.F.R. § 404.1512(g); 20 C.F.R. §

404.1560(c).

## C. The ALJ's Decision

At step one of the sequential evaluation process, the ALJ determined that Truitt had not engaged in substantial gainful activity since April 6, 2003, the alleged disability onset date. Tr. 837. At step two, the ALJ determined that Truitt had the following severe impairments: (1) obesity; (2) obstructive sleep apnea; (3) late onset diabetes mellitus type II; (4) hypertension; (5) degenerative conditions of the cervical spine; and (6) anxiety disorder, affective disorder and pain disorder. *Id.*

At step three, the ALJ determined that Truitt did not have an impairment or combination of impairments that meet or medically equal a listed impairment. *Id.* at 841. The ALJ initially noted that there was no objective medical evidence or clinical findings supporting spinal stenosis, herniation, weakness or impingements attributable to Truitt's small disc bulge at C5-6 and degenerative disc disease. *Id.* In addition, the ALJ noted that there was no evidence suggesting that Truitt's mental impairments caused marked or extreme limitations. The ALJ specifically considered listing 12.04 and 12.06, which he found were not satisfied. *Id.*

Mental impairments satisfy the "paragraph B" criteria if they cause at least two of the following: (1) marked restrictions in activities of daily living; (2) marked difficulties in social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. *Id.* In considering the evidence in the record, the ALJ found that Truitt had only mild restrictions in activities of daily living. *Id.* This finding was based on Truitt's testimony that she drives her vehicle when necessary, performs household chores, prepares meals, does crafts, speaks with friends over the

telephone and attends church. *Id*. In the area of social functioning, the ALJ found that Truitt had moderate difficulties. *Id*. He noted that Truitt remained able to attend doctor's appointments and pick up her medications from Wal-Mart without difficulty. *Id*. at 841-42. However, the ALJ also noted that even while using her medication, Truitt remained depressed and spent most of her time in bed. *Id*. at 842. While Truitt testified that she avoids public places because she gets panic attacks, the ALJ noted found that the record revealed no evidence of panic attacks at treating sessions, examinations or at the administrative hearing. *Id*.

With respect to concentration, persistence and pace, the ALJ found Truitt had moderate limitations. *Id*. This assessment was consistent with an examination by Dr. Eggerman resulting in a GAF score of 55-60. *Id*. The ALJ further noted that Truitt was able to testify coherently at the administrative hearing and followed all of his questions without difficulty. *Id*. In making this finding, the ALJ also relied on Dr. Robbins' opinions. Dr. Robbins opined that Truitt had an "unlimited ability to carry out simple job instructions and fair, or limited but satisfactory ability to maintain concentration and demonstrate reliability, and good ability to follow work rules." *Id*. While Dr. Robbins assessed a seriously limited but not precluded ability to handle work stress impacting Truitt's abilities in concentration and persistence, the ALJ found that there was no persuasive evidence of more than moderate limitations in these areas. *Id*. Finally, the ALJ determined that there was no evidence in the record showing that Truitt had experienced repeated episodes of decompensation of extended duration. *Id*. Accordingly, the ALJ determined that the "paragraph B" criteria were not satisfied.[1]

---

[1] The ALJ also considered the "paragraph C" criteria which he found were not satisfied because there was no evidence that Truitt had difficulty functioning outside of the home. Tr. 842.

Prior to step four, the ALJ determined that Truitt had the residual functional capacity:

> to perform light work except that she can perform no more than occasional climbing ramps or stairs, stooping, bending, crouch or turning/twisting of her neck; she cannot perform any climbing ladders/ropes/scaffolding or crawling; she can perform simple tasks in an object focused setting that requires no contact with the general public, no more than occasional contact with coworkers, and where supervision is direct and non-confrontational; she cannot perform highly stressful production rate or quota work.

*Id*. at 842-43. In making the RFC determination, the ALJ considered Truitt's hearing testimony about the intensity, persistence and limiting effects of her symptoms and found her testimony not entirely credible.[2] *Id*. at 844. The ALJ's gave significant weight to the opinions of Dr. Robbins and accorded little weight to the opinion of Dr. Berk, Truitt's treating physician. *Id*. The ALJ explained that Dr. Berk's opinion was inconsistent with Dr. Raza's treating notes, counseling notes, hospital records and two consultative examinations, and was only supported by Truitt's subjective complaints rather than objective medical findings. *Id*.

At step four, then ALJ determined that Truitt's RFC rendered her unable to perform the requirements of her past relevant work as a telemarketer. *Id*. at 846. Because Truitt was deemed unable to perform her past relevant work, the evaluation process proceeded to step five. At step five, the ALJ initially noted that Truitt was twenty-seven years old when her application for benefits was filed. *Id*. Next, the ALJ found that Truitt had a high school education and was able to communicate in English. *Id*. Based on these findings, the ALJ determined that considering Truitt's age, education, work experience, and RFC, there were jobs existing in significant numbers in the national economy that she could perform. *Id*. This finding relied on testimony by a vocational expert ("VE") that a hypothetical individual with Truitt's's characteristics would be

---

[2] Truitt has not challenged the propriety of the ALJ's credibility determination.

able to perform the requirements of such representative occupations as room cleaner, food preparation worker, small parts inspector and hand packer. *Id*. at 847.

Based on all of the aforementioned findings, the ALJ determined that Truitt had not been under a disability as defined in the Social Security Act ("SSA") since September 8, 2003, when the application for disability benefits was filed. *Id*. Accordingly, the ALJ denied Truitt's claim for benefits.

**D. Analysis**

**1. The ALJ properly rejected Dr. Berk's opinion.**

Truitt first asserts that the ALJ improperly rejected the opinion of her treating psychologist, Dr. Berk, and failed to provide an adequate rationale for rejecting Dr. Berk's opinion. Dr. Berk submitted a letter on July 6, 2005 opining that "[a]t this time...she [Truitt] cannot handle the stress of a job. Her moodiness, and her overall difficulties controlling all of her symptoms are currently interfering with the successful achievement of employment." Tr. 421. For the reasons set forth below, the Court finds that the ALJ did not err in rejecting Dr. Berk's opinion because it was not supported by substantial evidence in the record. In addition, the Court finds that the ALJ's hearing decision adequately explained why Dr. Berk's opinion was given little weight.

The treating physician rule generally requires an ALJ to give greater deference to the opinions of treating physicians than to the opinions of other non-treating physicians because:

> these sources are likely to be the medical professionals most able to provide a detailed longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

*Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)). However, the ALJ is only required to give the opinion of a treating physician controlling weight if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." *Wilson*, 378 F.3d at 544 (quoting 20 C.F.R. § 404.1527(d)(2)). A Social Security Ruling clarifies that "[i]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record." Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9 at *5, 1996 WL 374188, at *2 (July 2, 1996).

However, even if the ALJ does not give a treating physician's opinion controlling weight, he must still determine how much weight is appropriate by considering a number of relevant factors including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician. *Wilson*, 378 F.3d at 544; *see also* 20 C.F.R. § 404.1527(d)(2).

Closely associated with the treating physician rule, is the rule that the ALJ should "always give good reasons in [the] notice of determination or decision for the weight" given to the treating source's opinion. *See* 20 C.F.R. § 404.1527(d)(2). The reasons given must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9 at * 12, 1996

WL 374188, at * 5 (July 2, 1996).

In this case, the ALJ recognized that Dr. Berk was a treating source, but determined that her opinion was not entitled to significant weight because it was "supported only be the claimant's subjective reports and...[was] inconsistent with Dr. Raza's treating notes, the counseling notes, the hospital records, and two other consultative examiners." Tr. 844. Upon reviewing the medical evidence in the record, the Court agrees with the ALJ that Dr. Berk's opinion was inconsistent with the other medical evidence in the record and finds that the ALJ did not err by giving her opinion little weight. *See* 20 C.F.R. § 404.1527(d)(4) (explaining that "the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion").

Truitt was examined by Dr. Kevin Eggerman in January 2004. *Id*. at 259. Dr. Eggerman determined that Truitt's:

> ability to understand and remember short and simple instructions and carry out short and simple instructions is minimally limited. Her ability to understand and remember detailed instructions and carry out detailed instructions is mildly to moderately limited. Her ability to make judgments on simple work-related decisions is mildly limited. The claimant's ability to interact appropriately with the public, supervisors and coworkers is mildly to moderately limited. Her ability to respond appropriately to work pressures in the usual work setting is moderately limited and her ability to respond appropriately to changes in a routine work setting is mildly limited.

*Id*. Dr. Eggerman also recommended that Truitt structure her daily activities and "not isolate" and indicated that "[v]ocational rehabilitation is not contraindicated from a psychiatric perspective." *Id*. Finally, Dr. Eggerman indicated that her prognosis was fair but that she should continue formal psychiatric treatment including psychotherapy and medication management. *Id*. These opinions are contrary to Dr. Berk's and appear to indicate that Truitt's ability to deal with

10

normal work pressures did not preclude her from performing full time work.

Other medical evidence in the record similarly contradicts Dr. Berk's opinion. In May 2009, Dr. Jeanne Bennett, a psychiatrist examined Truitt and determined that her mental limitations were moderate or slight. *Id*. at 1450. Dr. Bennett assigned Truitt a Global Assessment of Functioning ("GAF") score of 65[3] suggesting an individual with "mild" symptoms who is "generally functioning well." *See* AMERICAN PSYCHIATRIC ASS'N, *Diagnostic and Statistical Manual of Mental Disorders*, 32-34 (4th ed. 2000). In light of this GAF score and Dr. Bennett's other findings, the ALJ was justified in rejecting Dr. Berk's opinion. This finding is consistent with the Sixth Circuit's decision in *Hash v. Comm'r of Soc. Sec.*, 309 Fed. App'x 981, 988-89 (6th Cir. 2009) (unpublished), recognizing that an ALJ may reject a treating physician's opinion that is contradicted by other substantial evidence in the record including a GAF Score of 60-65 that was assessed by an examining physician. *Id*. at 989.

The ALJ also relied on the opinion of Dr. Robbins, a non-examining physician, in rejecting Dr. Berk's opinion. Under the Social Security Regulations, the opinions of state agency non-examining psychologists and physicians are relevant evidence in making the disability determination. *See* 20 C.F.R. § 416.912(b)(6). Upon reviewing Truitt's medical records, Dr. Robbins noted that:

> [t]here is a conflict between the opinion of the most recent psychotherapist, Dr. Berk, and the opinion of the treating primary care physician (Dr. Colton), and the treating mental health providers prior to Dr. Berk, and a consultative examiner, Dr. Eggerman. In general, Dr. Berk's opinion is different from the remainder of the record.

Tr. 472. While Dr. Robbins agreed with Dr. Berk's opinion that Truitt "has a record of anxiety

---

[3] GAF scores reflect an assessment of an individual's symptoms or possible difficulties in social, occupational, or school functioning. A GAF score within the 61 to 70 range suggests "mild" symptoms. *Id*.

and mood symptoms along with difficulty handling...interpersonal situations," she found "no evidence that...[Truitt] has been impaired with respect to handling routine non-stressful or non-conflictual interpersonal interactions." *Id*. at 475. In his hearing decision, the ALJ recognized the conflict between Dr. Berk's and Dr. Robbins' opinions and accorded greater weight to Dr. Robbins' opinion because he it was more consistent with the other evidence in the record. *Id*. at 844-45. The Sixth Circuit has recognized that the ALJ should resolve this kind of conflict in the evidence and not the reviewing court. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).

The ALJ also noted that Dr. Berk's opinion was inconsistent with the longitudinal medical evidence showing Truitt's condition as stable, showing her making progress and enjoying and adjusting to the stresses of group therapy. Tr. 845. For example, the treatment notes of Truitt's treating psychiatrist, Dr. Raza, are inconsistent with Dr. Berk's opinion. They indicate that Truitt maintained "good eye contact, mood is euthymic,[4] affect congruent, speech is normal, no hallucinations/suicidal/homicidal thoughts...." *Id*. at 643. In May 2006, Dr. Raza again noted that Truitt's mood was euthymic, affect was congruent, and her thought processes were logical and sequential with no hallucinations, delusions, or suicidal or homicidal ideations. *Id*. at 622. Dr. Raza further noted that Truitt was alert and oriented, had fair insight and judgment and should attend counseling sessions. *Id*. Dr. Raza made similar findings in March, April and June of 2007. *Id*. at 578, 584, 589. These treatment notes further support the ALJ's determination that Dr. Berk's opinion was entitled to little weight.

---

[4] "Euthymic is a medical term referring to a joyful or tranquil mood, neither manic nor depressed." *Sultan v. Barnhart*, 368 F.3d 857, 861 n.2 (8th Cir. 2004).

Finally, the ALJ noted that Dr. Berk's opinion was entitled to little weight because it was based primarily on Truitt's subjective complaints. *Id*. at 844. The Sixth Circuit has frequently held that the Commissioner may reject treating physician opinions which are not adequately supported by medical findings. *See, e.g.*, *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 652 (6th Cir. 2006)(en banc); *Cutlip v. Sec'y of H.H.S.*, 25 F.3d 284 (6th Cir. 1984); *see also* 20 C.F.R. § 416.927(d)(3) (indicating that an ALJ should consider the extent to which a treating source's opinion is supported by "relevant evidence..., particularly medical signs and laboratory findings."). As indicated by the ALJ's hearing decision, Dr. Berk's treatment notes consist primarily of Truitt's subjective descriptions of her mental impairments. Tr. 839. Because Dr. Berk's opinion was not supported by medical findings the ALJ properly rejected it. In addition, the ALJ determined that Truitt's statements about the intensity, persistence and limiting effects of her impairments were not credible - a finding that Truitt has not challenged. *Id*. at 844. The fact that Dr. Berk's opinion was based primarily on subjective complaints from a source that the ALJ did not find credible further supports the ALJ's decision to give Dr. Berk's opinion little consideration. *See Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 877 (6th Cir. 2007) (finding that the ALJ did not err in rejecting the opinion of the claimant's treating physician, where the opinion was based solely on the claimant's statements concerning her symptoms and conditions).

For these reasons and others contained in the ALJ's hearing decision, the Court finds that Dr. Berk's opinion was properly given little weight because it was not supported by substantial evidence in the record. In addition, the Court finds that the ALJ adequately explained his reasons for giving Dr. Berk's opinion little weight.

### 2. The ALJ properly considered Dr. Burchett's opinion.

The ALJ's hearing decision indicated that he "accord[ed] some but not great weight to Dr. Burchett's medical source statement finding that...[Truitt] can perform medium exertional activity with some limitations, but note[d] [that] Dr. Burchett did not consider the claimant's prescribed medication, particularly long term use of Lortab 10, or her surgical history." Tr. 845. Truitt asserts that the ALJ erred because he "intend[ed] to find even greater restrictions than Dr. Burchett, who performed the 2009 agency exam...[but] the physical restrictions which he adopted and advised the vocational expert to assume actually omitted key restrictions which Dr. Burchett assessed." Rec. 17, Pl.'s MSJ at 22. In reviewing the ALJ's hearing decision, the Court finds that this argument is without merit.

> Upon reviewing the medical evidence in the record, the ALJ indicated that he was:
>
> persuaded by the objective evidence of degenerative neck conditions, poorly controlled hypertension, multiple abdominal surgeries, and obesity, [that] the claimant is limited to no greater than light lifting and carrying 20 pounds occasionally, 10 pounds frequently. She should never climb ladder[s]/ropes/scaffolds or crawl; she can perform no more than occasional climbing ramps/stairs, stooping, bending, or crouching, or turning/twisting of the neck. *Greater limitations are not warranted*.

Tr. 845-46 (emphasis added). Thus the ALJ's hearing decision makes clear that he had no intention of adopting restrictions assessed by Dr. Burchett beyond those discussed in his hearing decision. In addition, the ALJ made clear that he did not accord great weight to Dr. Burchett's opinion.

Dr. Burchett is not a treating physician and his opinion is not entitled to any special level of deference. However, the ALJ clearly considered Dr. Burchett's opinion before ultimately determining it was entitled to little weight. Because the ALJ gave the opinion little weight, he

14

did not err in failing to adopt all of the restrictions in Dr. Burchett's opinion or failing to incorporate all of them into his hypothetical to the VE.  Accordingly, the Court finds that the ALJ's hypothetical to the VE accurately conveyed Truitt's physical limitations which were supported by the evidence in the record.  *See Varley v. Sec'y of H.H.S.*, 820 F.2d 777, (6th Cir. 1987) (explaining that at step five of the sequential evaluation process, substantial evidence may be produced "through reliance on the testimony of a vocational expert in response" to hypothetical questions accurately portraying the claimant's "physical and mental impairments.").

        **3. The ALJ's properly conveyed Truitt's mental impairments to the VE.**

Finally, Truitt asserts that the ALJ's hypothetical to the VE failed to accurately convey the mental limitations imposed by Dr. Robbins.  Specifically, Truitt argues that the hypothetical question was defective because it omitted unspecified key restrictions by Dr. Burchett and did not accurately depict the restrictions assessed by the medical expert on whom the ALJ stated that he intended to rely.  Furthermore, Truitt notes that the VE who testified at her first hearing explained that a "seriously limited, but not precluded" ability to perform several mental functions would eliminate all jobs.  In support of her argument, Truitt notes that Dr. Robbins found that her ability to deal with work stresses was seriously limited, but not precluded.  Tr. 483.  However, for the reasons set forth below, the Court finds that this argument is without merit.

As the ALJ noted in his hearing decision, Dr. Robbins clarified her findings in her opinion summary, indicating that based on the medical evidence in the record, Truitt was limited:

> *to low stress jobs that...[did] not involve high degrees of production pressure* ; and...are not interpersonally demanding in the sense of requiring the claimant to handle harsh supervision or in the sense of requiring her [to] manage interpersonal conflict as an essential element of the job.

Tr. 475, 845 (emphasis added). Accordingly, the ALJ's mental RFC limited Truitt to jobs with simple instructions in an object-focused setting, no interaction with the general public, occasional and casual contact with co-workers and supervisors, direct and non-confrontational supervision and precluded her from performing work requiring a highly stressful production rate or quota. *Id*. at 842-43. In posing the hypothetical to the VE, the ALJ asked the VE to assume that the hypothetical individual would have:

> no interaction with the general public; assume no more than occasional and casual contact with co-workers, supervision. Supervision...must be direct and non-confrontational. No more than simple instructions. The claimant requires an object-focused work environment.

*Id*. at 1496. Finally, the ALJ cautioned the VE that Truitt could not perform "highly stressful jobs which will preclude production rate and quota jobs." *Id*. at 1496-97.

In reviewing the ALJ's mental RFC, Truitt's relevant mental restrictions and the hypothetical posed by the ALJ to the VE, the Court finds that the ALJ properly and accurately conveyed Truitt's inability to work in a high stress work environment among other relevant mental impairments. Accordingly, the Court finds that the VE's testimony in response to the hypothetical provided substantial evidence in support of the Commissioner's finding that there are other jobs existing in significant numbers in the national economy that Truitt can perform.

### III. CONCLUSION

For the reasons set forth above, the Court finds that the Commissioner's decision denying Truitt's application for benefits is supported by substantial evidence in the record. Accordingly, the Court **HEREBY ORDERS** as follows:

(1) Truitt's Motion for Summary Judgment (Rec. 14) is **DENIED;**

(2) The Commissioner's Motion for Summary Judgment (Rec. 18) is **GRANTED;** and

(3) A judgment shall be entered concurrently with this Memorandum Opinion and Order.

This the 23rd day of August, 2010.

Signed By:
*Karen K. Caldwell* KKC
United States District Judge